Ashley Rachel Beard
BAR No. 413747
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

YOUNES DAVOODI BENI,                              )
                                                 )      Case No.
     Petitioner,                               )
                                                 )      **PETITION FOR WRIT OF**
v.                                               )      **HABEAS CORPUS**
                                                 )
The Warden of the Folkston Detention Center;     )
DAN JONES**,** Assistant Field Office Director of    )
Atlanta Field Office, TODD LYONS, in his         )      **HEARING REQUESTED**
Official capacity as Acting Director of          )
U.S. Immigration and Customs Enforcement;        )      **REQUESTED**
KRISTI NOEM**,** Secretary of the U.S. Department   )
of Homeland Security; and PAM BONDI**,**            **)**
Attorney General of the United States,           )
in their official capacities,                    )
                                                 )
     Respondents.                              )
_____)

## <u>INTRODUCTION</u>

1.  Petitioner Younes Davoodi Beni ("Mr. Davoodi") (221-307-018), originally from

    Iran, has been imprisoned in U.S. Immigration and Customs Enforcement ("ICE")

    custody since January 15, 2025, without a bond hearing. He was placed in removal

    proceedings after the U.S. Department of Homeland Security ("DHS") issued a

    Form I-862, Notice to Appear ("NTA") on February 13, 2025.

2.  On May 22, 2025, Mr. Davoodi filed an I-589, Application for Asylum and for

    Withholding of Removal with the Court, with the supporting evidence.

1

3. Mr. Davoodi fled Iran because his life was at imminent risk, after the Iranian authorities began a criminal investigation of his relationship with another man, Mr. Hossein Ghadimisangari (221-307-019), with whom he has had a relationship for over a decade.

4. In Iran, homosexuality is a crime punishable by death. According to the Islamic Penal Code of Iran, same sex relationship is a capital offense, known as "lavat". Additionally, such a type of relationship is also an unforgivable sin under the Islamic Religion, vastly predominant in the country. Considering the criminal and societal aspects, the Petitioner has lived in fear.

5. Having suffered prejudice throughout his life, he has had many traumatic experiences, including having his right wrist broken by his own uncle, Mr. Davoodi. Still, Mr. Davoodi managed to live a private and calm life for his own sake. However, after going on vacation with his partner in September 2024, his life turned upside down. A hidden camera captured intimate moments of the couple, which led the hotel to report them to the police. Once they returned home, his partner received a court summons. Since departing from Iran, Mr. Davoodi was also served a summons and received a travel ban.

6. As previously mentioned, the charge of sodomy is punishable by death, leaving Mr. Davoodi and his partner no other choice but to escape and seek asylum in the United States.

7. On July 1, 2025, and July 16, 2025, Mr. Davoodi had individual merits hearings before Immigration Judge Sheila Gallow at the Stewart Immigration Court, during which evidence and testimonies were taken.

8. On August 5, 2025, the Court issued a decision on the matter, denying the asylum application for understanding that Mr. Davoodi was barred from such relief due to the Circumvention of Lawful Pathways rule, but granted his application for withholding of removal under INA §241(b)(3). The decision is now on appeal by DHS.

9. It has been determined and confirmed by the Court that "it is more likely than not that his life or freedom would be threatened on account of a protected ground, his membership in his cognizable PSG comprised of homosexual men in Iran, if he were to return to Iran". *Id.*

10. After this, Mr. Davoodi is still detained in Folkston Detention Center, where he has been locked up for the past nine (9) months. Once questioned by this attorney about the intended date of release, the Folkston Outreach Team answered that "DHS will reach out to three countries to see if they will accept him. If a third country will not accept him, a final decision will be made at that time." *Id.* Meaning, he faces detention for an undetermined amount of time, or even years.

11. Mr. Davoodi challenges his prolonged detention as a violation of the Immigration and Nationality Act and the Due Process Clause of the U.S. Constitution. He respectfully requests that this Court order Respondents to show cause why the writ should not be granted within three days and, if necessary, set a hearing on this Petition within five days of the return, pursuant to 28 U.S.C. § 2243, and grant him a Writ of Habeas Corpus, ordering Respondents to release him or provide him with an individualized bond hearing before an Immigration Judge.

## JURISDICTION AND VENUE

12. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

13. This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201-02 (declaratory relief), and art. I sec. 9, cl. 2 of the United States Constitution (Suspension Clause), as Mr. Davoodi is presently in custody under or by color of the authority of the United States and challenges his custody as in violation of the Constitution, laws, or treaties of the United States.

14. The federal district courts have jurisdiction under Section 2241 to hear habeas claims by individuals challenging the lawfulness of their detention by ICE. See, e.g., Demore v. Kim, 538 U.S. 510 (2003); Zadvydas v. Davis, 533 U.S. 678 (2001). The Supreme Court upheld the federal courts' jurisdiction to review such claims in Jennings v. Rodriguez, __ U.S. __, 138 S. Ct. 830, 839-41 (2018).

15. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

16. Venue is proper because Petitioner is detained at Folkston Detention Center, in Folkston, Georgia, which is within the jurisdiction of this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

17. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

18. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

19. Mr. Davoodi is currently detained by Respondents in the Folkston Detention Center.

20. The Warden of Folkston Detention Center is not disclosed online. The person responsible for said institution, where Mr. Davoodi is currently detained under the authority of ICE has direct control over his physical custody. They're sued in their official capacity.

21. Respondent Dan Jones is the acting Director of ICE's Atlanta Field Office, which has jurisdiction over ICE detention facilities in Georgia, including Folkston Detention Center, and thus is Mr. Davoodi's immediate custodian. He is sued in his official capacity.

22. Respondent Todd Lyons is the acting Director of ICE. He is responsible for the administration of ICE and the implementation and enforcement of the immigration laws, including immigrant detention. As such, Mr. Lyons is a legal custodian of Mr. Davoodi. He is sued in his official capacity.

23. Respondent Kristi Noem is the Secretary of the Department of Homeland Security (DHS), which is responsible for the administration of ICE, a subunit of DHS, and the implementation and enforcement of the immigration laws. As such, Mrs. Noem is the ultimate legal custodian of Mr. Davoodi. She is sued in his official capacity.

24. Respondent Pam Bondi is the Attorney General of the United States and head of the Department of Justice, which encompasses the BIA and the Immigration Courts. Mrs. Bondi shares responsibility for the implementation and enforcement of the immigration laws with Respondent Noem. Mr. Bondi is a legal custodian of Mr. Moreno-Romero. She is sued in his official capacity.

## STATEMENT OF FACTS

25. Petitioner Younes Davoodi Beni is a twenty-six (26) year old native and citizen of Iran, who fled his home country in October of 2024 and entered the United States on January 15, 2025, as his life was at imminent risk at the hands of his home country authorities.

26. Mr. Davoodi turned himself in to ICE agents on January 15, 2025, and has been detained at Folkston Detention Center since. On May 21, 2025, through his

attorneys, he filed the I-589, Application for Asylum and for Withholding of Removal.

27. The Court found the Petitioner credible, that his fear was well-founded and genuine, and that he showed a clear probability of future persecution in Iran on account of his cognizable PSG, "homosexual man in Iran". Moreover, the Court understood that: "should Respondent be forced to return to Iran, there is a clear probability that he will be arrested, tortured, and possibly executed, without due process. This finding is amply supported by the explicit Iranian laws on homosexuality, a Court Decision issued against Respondent, and evidence that the Iranian police are actively searching for both Respondent and his partner". *Id.*

28. Mr. Davoodi has no criminal history, nor does he represent any threat to national safety.

29. Additionally, his fear of being returned to his country or a third country near his own, which could ultimately deport him back to Iran, is well-founded and justified. His life and integrity in Iran were at imminent risk, and for not feeling safe, he fled to a different part of the world.

30. Furthermore, Mr. Davoodi faced an extreme threat to his life on his journey through other countries in the Americas, such as Colombia and Mexico. He and his partner were kidnapped, robbed, forced to perform labor for cartel members, threatened, and beaten by multiple people. After, they were left at the U.S. border.

31. That the first Respondent does not have the power or authority to unilaterally elect a country to deport the Petitioner to, especially considering the particularities of

this case. Hence, the prolonged detention of the Petitioner represents a disrespect for due process and humanitarian concerns.

32. Removing the Petitioner to a third country without considering if he would be subjected to persecution, torture or deportation back to Iran would be the same as sending him directly there.

33. On another perspective, it is also preoccupying that the DHS has recently removed or attempted to, non-citizens to a maximum-security prison in El Salvador and to war-torn countries, such as Libya and South Sudan, as the Practice Alert shows (NILA, June 2025). It is subsidiarily requested that DHS provide notice and an opportunity for the Petitioner to seek protection and analyze the proposed third countries.

34. That DHS has appealed the Court Order, regarding the grant of Withholding of Removal. Thus, the case is pending with the BIA, which will cause additional months of delay in his release, while all of his claims for relief are considered.

35. If the BIA does not rule in Mr. Davoodi's favor, he may appeal to the Eleventh Circuit.

36. If released from detention, Mr. Davoodi would seek refuge in a friend's house in California and support himself with the help of his mother, who has arranged the legal representation for him as well.

37. That Mr. Davoodi also has a U.S. Citizen sponsor should he be released.

## LEGAL FRAMEWORK AND ARGUMENT

I.    **Mr. Davoodi Is Detained Pursuant to the Pre-Removal Period Detention Statue-8 U.S.C. §1226**

**A.  The Immigration Detention Statutes**

38. Two main provisions of the Immigration and Nationality Act (INA) govern the detention of noncitizens pending removal: 8 U.S. C. §§ 1226 and 2131.[1] Section 1226 governs detention of individuals "pending a decision on whether [they are] to be removed from the United States." 8 U.S.C. § 1226(a). Section 1231 governs detention of individuals during and, in some cases, after the "removal period," 8 U.S.C. §1231(a)(1)(A), i.e., while they are awaiting removal after exhausting the available legal avenues to challenge a final removal order.

39. Detention under Section 1226 is generally discretionary. *Jennings¸*138 S.Ct. at 846. An individual detained under subsection (a) of that statute is immediately eligible to request release on bond or conditional parole. *See* 8 U.S.C. § 1226(a); 8 C.F.R § 1236.1(d)(1). Only under special, limited circumstances – not applicable here- does Section 1226 mandate detention. *See* 8 U.S.C. § 1226(c) (the government "shall take into custody any alien" who has committed certain criminal offenses "when the alien is released" from criminal custody).

40. Section 1231 comes into play once an individual has exhausted legal avenues to challenge his removal order and there is no longer any legal impediment to his removal. That section mandates detention only during the initial 90-day "removal

---

[1] Separate statutory provisions, which do not apply here, govern the detention of particular categories of noncitizens.  *See* 8 U.S.C. §§ 1225(b) (individuals classified as "arriving aliens") and 1226A (suspected terrorists).

period," 8 U.S.C. § 1231(a)(1)(A)- the time window during which the government typically effectuates the individual's removal. The removal period "begins on the latest of the following:

  i. The date the order of removal becomes administratively final.

  ii. If the removal order is judicially reviewed and if a court orders s stay of the removal of the alien, the date of the court's final order.

  iii. If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). The removal period may be extended beyond 90 days if the individual "fails or refuses to make timely application in good faith for travel or other documents necessary to [his] departure or conspires or acts to prevent [his] removal." *Id.* § 1231(a)(1)(C). After the initial removal period, detention under Section 1231 is no longer mandatory. The government "may" detain beyond the removal period certain "[i]nadmissible or criminal aliens" or individuals determined "to be a risk to the community or unlikely to comply with the order of removal." *Id.* § 1231(a)(6).

**B. Mr. Davoodi, Whose Removal Is Stayed Pending the BIA's Review on DHS' Appeal, Is Detained Pursuant to 8 U.S.C. § 1226, not U.S.C. § 1231**

41. DHS is seeking review of the Immigration Judge's grant of Withholding of Removal on behalf of Mr. Davoodi. These terms included a stay of Mr. Davoodi removal during the pendency of the review.

42. Because Mr. Davoodi's removal continues to be stayed by the Board of Immigration Review, his removal period has not begun under section 1231. According to the plain language of that section, when an individual has been granted a stay of removal pending judicial review of his removal order, the removal period has not yet begun, 8 U.S.C. § 1231(a)(1)(B) ("The removal period begins on the latest of the following: …(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."), and thus his detention is not yet governed by that statute. It is axiomatic that when a statute is unambiguous, the courts are bound to faithfully apply its plain language. *See Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 487 (11th Cir. 2015) ("As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used.") (quoting *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 68 (1982)). Section 1231 unambiguously states that individuals like Mr. Hernandez Chinchilla, who has been granted a stay of removal while seeking review of a removal order, have not yet entered the removal period and thus are not subject to the detention rules of that section. Section 1226, which applies to detention that precedes the removal period, applies instead.

43. Multiple circuit courts have agreed with this reading of the statutory scheme. *See Leslie v. Att'y Gen.,* 678 F.3d 265, 270 (3d Cir. 2012), *abrogated in part on other grounds by Jennings,* 138 S.Ct. at 847; *Prieto-Romero v. Clark,* 534 F.3d 670, 689 (6th Cir. 2001) *abrogated on other grounds by Fernandez-Vargas v. Gonzalez,* 548 U.S. 30 (2006). As the Third Circuit explained, "insofar as the purpose of §1231 detention

is to secure an alien pending the alien's certain removal, §1231 cannot explain nor authorize detention during a stay of removal pending further judicial review." *Leslie,* 678 F.3d at 270. Consequently, because Section 1231 does not govern detention while an individual's removal is stayed pending judicial review, the pre-removal period detention statute, Section 1226, must control. *See Wang,* 320 F.3d at 147.

44. DHS sought judicial review of the Immigration Judge's decision with the Board of Immigration Appeals. Accordingly, his removal period has not yet begun and his detention is governed by Section 1226.

## C. Mr. Davoodi is Entitled to Immediate Release or a Bond Hearing Under Section 1226(a)

45. Mr. Davoodi has been granted Withholding of Removal and is entitled to immediate release. Moreover, Mr. Davoodi, who has never been convicted of a crime, is not and has never been subject to mandatory detention under Section 1226(c). Thus his detention is governed by the "default" discretionary detention provision, Section 1226(a). Under that section, he is immediately eligible for relapse, given the prolonged nature of his civil detention, his strong ties to the community, and his negative criminal history. Based on Mr. Davoodi's overwhelming positive equities, his extremely low risk of flight, and the already prolonged deprivation of liberty he has already experienced, this Court should order the government to release him under appropriate conditions of supervision.

46. As a matter of law, the government cannot meet its burden to show that Mr. Davoodi is either a flight risk or danger to the community, particularly when there exist

numerous less restrictive means of ensuring Mr. Davoodi's attendance at immigration proceedings, such as a reasonable money bond, supervised release with regular reporting requirements, or electronic ankle monitoring. *See Hernandez v. Sessions,* 872 F. 3d 976, 990-91 (9th Cir. 2017) (ICE's alternatives to detention program- the Intensive Super version Appearance Program- has resulted in appearance rates close to 100 percent). "Rules under which personal liberty is to be deprived are limited by constitutional guarantees of all, be they moneyed or indigent, befriended or friendless, employed or unemployed, resident or transient, of good reputation or bad. The ultimate inquiry in each instance is what is necessary to reasonably assure defendant's presence at trial." *Pugh v. Rainwater,* 572 F. 2d 1053, 1057 (5th Cir. 1978) (en banc) (detention of an indigent person for inability to post money bail is impermissible if the individual's appearance "could reasonably be assumed by one of the alternate forms of release").

### D. In the Alternative, Mr. Davoodi is Entitled to Immediate Release or a Bond Hearing Under Section 1231(a)(6)

47. Even if the Court determines that Mr. Davoodi's detention is governed by Section 1231, he is entitled to immediate release or, alternatively, an individualized bond hearing to assess the necessity and legality of his continued detention, at which the government bears the burden of proving that he is a flight risk or a danger to the community.

48. The only subsection of Section 1231 that could conceivably govern Mr. Davoodi detention is Section 1231(a)(6), which permits- but does not require- the government

to continue to detain beyond the removal period certain "[i]nadmissible and criminal aliens"[2] and individuals determined to present a danger to the community or a risk of flight. 8 U.S.C. §1231(a)(6). Section 1231(a)(6) provides that such persons "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." [3]

49. Assuming *arguendo* that under section 1231(a)(1)(A) Mr. Davoodi's removal period commenced upon the Immigration Judge's grant of Withholding of Removal on August 5, 2025, more than forty-two days have passed. Multiple courts have held that noncitizens are eligible for release under section 1231(a)(6) following the 90-day removal period. *See Diouf v. Napolitano,* 684 F.3d 1081, 1092 (9th Cir. 2011); *accord Guerrero-Sanchez v. Warden York Cty. Prison,* 905 F.3d 208, 224 (3d Cir. 2018); *see also* 8 C.F.R. §§241.4; 241.5(b) (regulations establishing bond eligibility for non-citizens after the conclusion of the removal period).

50. Moreover, in *Zadvydas,* the Supreme Court recognized that the Fifth Amendment's Due Process Clause imposes limitation on the government's discretionary detention authority under Section 1231(a)(6). 533 U.S. at 689. The Court held that prolonged detention under Section 1231(a)(6) is no longer permissible if it is not reasonably related to the statutory purpose of ensuring the individual's prompt removal. *See id.* at

---

[2] Mr. Davoodi is not a "criminal alien," but he is "inadmissible" within the meaning of section 1231(a)(6) because he is a non-citizen who is "present in the United States without being admitted or parole, or who arrive[d] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. §1182 (a)(6)(A)(i).

[3] Paragraph 3 of section 1231(a) provides for supervision without detention, including mandatory check-ins with ICE officers and compliance with restriction on the noncitizen's conduct and activities. *See* 8 U.S.C. §1231(a)(3). In his requests for release, Mr. Davoodi has stated that he is amenable to such supervision.

699-701. To state a claim under *Zadvydas* in the Eleventh Circuit, an individual detained under Section 1231(a)(6) must show "post-removal order detention in excess of six months" and "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft,* 287 F.3d 1050, 1052 (11 Cir. 2002)(citing *Zadvydas* 533 U.S. at 701).

51. Although Mr. Davoodi has not been detained post-removal order in excess of six months, he should be released as he was granted Withholding of Removal and there is no significant likelihood of removal in the foreseeable future as his case is now on appeal before the BIA.

52. There is good reason to believe that Mr. Davoodi will prevail on appeal as he was already granted Withholding of Removal by the Immigration Judge. There is not only good, but *ample*, reason to believe his removal is not significantly likely in the reasonably foreseeable future. And the likelihood of foreseeable removal diminishes each day his already prolonged detention continues during the process. *Zadvydas*, 533 U.S. at 701 ("for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.").

53. Mr. Davoodi has not engaged in any conduct that would extend or suspend the removal period.

54. As detailed above in Section I.C *supra,* Mr. Davoodi's community ties, strong claims for immigration relief, and lack of criminal history establish that the government cannot meet its burden to justify his prolonged civil detention by showing flight risk or dangerousness to the community. Thus, Mr. Davoodi is entitled to immediate

release under *Zadvydas.* In the alternative, he must be provided with an individualized

hearing to determine whether the government can meet its burden in light of Section

1231's purpose.

### III.  Mr. Davoodi's Prolonged Detention Without a Bond Hearing Violates Due Process

55. Even if this Court determines that Mr. Davoodi is not entitled to a bond hearing under

Sections 1226 or 1231, his continued detention without a bond hearing under either

section violates due process. "Freedom from imprisonment- from government

custody, detention, or other forms of physical restraint – lies at the heart of the liberty"

that the Due Process Clause protects.  *Zadvydas,* 533 U.S. at 690 (citing *Foucha v.*

*Louisiana,* 504 U.S. 71, 80 (1992)). In the immigration context, the Supreme Court

has only recognized only two valid purposes for civil detention – to mitigate the risks

of danger to the community and to prevent flight. *Id.*; *Denmore,* 538 U.S. at 528.

Because Mr. Davoodi's ongoing deprivation of liberty is not sufficiently related to

either of these purposes, and because he has not been afforded the necessary

procedural safeguards, his detention violates due process.

56. Every federal appeals court to consider the issue, including the Eleventh Circuit, has

concluded – either as a matter of constitutional avoidance applied to statutory

construction or by reaching the due process question – that mandatory detention

without a bond hearing pending removal is impermissible once it exceeds a reasonable

time limitation. *See Sopo,* 82 F.3d 1199; *Reid v. Donelan,* 819 F.3d 486 (1st Cir. 2016);

*Lora v. Shanahan,* 804 F.3d 601) (2nd Cir. 2015); *Rodriguez v. Robbins,* 804 F.3d 1060

(9th Cir. 2015); *Diop v. ICE/Homeland Sec.,* 656 F.3d 221 (3rd Cir. 2011); *Ly v.*

*Hansen,* 351 F.3d 263 (6th Cir. 2003).

57. In *Jennings v. Rodriguez,* the Supreme Court held that the Ninth Circuit erred in applying the canon of constitutional avoidance to interpret 8 U.S.C. §§ 1226(c) and 1225(b) to require an individualized bond hearing for all noncitizens detained for over six months. 138 S. Ct. at 836. The Supreme Court remanded to the Ninth Circuit to address in the first instance whether prolonged detention without a bond hearing pending removal proceedings violates due process *Id.* at 851.

58. Although *Jennings* abrogated the statutory holdings of the First, Second, Third, Sixth, and Eleventh Circuits, those courts' reasoning remains persuasive authority with respect to the due process analysis. These courts identified "serious constitutional concerns." *Sopo,* 825 F.3d at 1213, with a reading of the statutory scheme that would permit prolonged detention absent any periodic review by a neutral decision-maker. Post-*Jennings,* court have held that a statutory detention scheme that does not allow for such review violates due process. *See Guerrero-Sanchez v. Warden York Cty. Prison,* 905 F.3d 208, 222 (3rd Cir. 2018) (noting that the Third Circuit's earlier constitutional precedent was not abrogated by *Jennings* and reaffirming that "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary."); *Hamama v. Aducci,* 349 F. Supp. 3d 665, 685 (E.D. Mich. 2018) (prolonged and indefinite detention of a nationwide class of Iraqi nationals including Section 1225, 1226 and 1231 detainees likely violated the detainees' due process rights "[r]egardless of which provision applies").

59. Mr. Davoodi's detention without a bond hearing should be presumed unreasonable because it has already exceeded forty-two days with an approved case.

60. Even if a bond hearing is not required after six months in every case, due process requires, at a minimum, a bond hearing after detention has become unreasonable prolonged. *See Diop,* 656 F.3 at 234. In determining the reasonableness of immigration detention, courts have looked to whether the noncitizen has raised a "good faith" challenge to removal that is "legitimately raised" and presents "real issues." *Chavez-Alvarez v. Warden York Cty. Prison,* 783 F.3d 469, 476 (3rd Cir. 2015). Reasonableness is also a "function of the length of the detention," *id.* at 477 (detention is presumptively unreasonable if it lasts six months to a year); *accord Sopo,* 825 F.3d at 1217-18, and the prospect of future detention pending the resolution of challenges to the individual's removal. *Chavez-Alvarez,* 783 F.3d at 477-478 (finding detention unreasonable after nine months of detentions, when parties "could have reasonable predicted that Chavez-Alvarez's appeal would take a substantial amount of time, making his already lengthy detention considerably longer"); *accord Sopo,* 825 F.3d at 1218; *Reid,* 819 F.3d at 500. The "conditions of confinement" also bear on the reasonableness analysis. *Chavez-Alvarez,* 783 F.3d at 478; *accord Sopo,* 825 F.3d at 1218 ("whether the facility for the civil immigration detention in meaningfully different from a penal institution for criminal detention" is a factor in reasonableness determination).

61. In addition to an individualized hearing before a neutral decision-maker, due process requires the government to provide Mr. Davoodi with other procedural safeguards to protect against the erroneous deprivation of liberty. First, the government must bear the burden of proof by clear and convincing evidence to demonstrate that he is a danger or flight risk. *See Singh v. Holder,* 638 F.3d 1196, 1203-05 (9th Cir. 2011); *see*

*also United States v. Salerno,* 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention where "full-blown adversary hearing" requiring "clear and convincing evidence" and "neutral decisionmaker"); *Foucha,* 504 U.S. at 81-83 (striking down civil detention scheme that placed burden on the detainee). *Zadvydas,* 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, *inter alia,* they place burden on detainee). Additionally, in order to show that an individual's continued detention is reasonably related to the detention statutes' primary purpose of ensuring appearance during removal proceedings and effectuating her removal, *see Zadvydas,* 533 U.S. at 697, the government must also consider alternatives to detention and an individual's ability to pay bond. *See Hernandez,* 872 F.3d at 990-991; *see also id.* at 991.

62. For these reasons, Mr. Davoodi's continued prolonged detention without a bond hearing runs afoul of both substantive and procedural due process.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF IMMIGRATION AND NATIONALITY ACT- 8 U.S.C. §1226

63. Mr. Davoodi re-alleges and incorporates paragraphs 1 to 62 above.

64. Because DHS is seeking judicial review of his Withholding of Removal grant at the Board of Immigration Appeals, and because his removal has been stayed pending the disposition of the appeal, his detention is governed by the pre-removal period detention statute, 8 U.S.C. § 1226.

65. Mr. Davoodi has not committed any offense that would trigger mandatory detention under Section 1226(c). Thus, his detention is governed by the default, discretionary pre-removal period detention provision, Section 1226(a).

66. Noncitizens detained under Section 1226(a) are immediately entitled to seek individualized review by an Immigration Judge of the government's decision to detain them pending removal proceedings. *See* 8 C.F.R. § 1236.1(d).

67. The circumstances of Mr. Davoodi's case overwhelmingly establish that he is neither dangerous nor a flight risk.

68. By continuing to detain Mr. Davoodi without a bond hearing for nearly seven months, Respondents are violating his rights under 8 U.S.C. § 1226.

69. Mr. Davoodi is entitled to immediate release, or an immediate hearing before an Immigration Judge to determine his eligibility for release on bond or parole.

**COUNT TWO**
**(ALLEGED IN THE ALTERNATIVE TO COUNT ONE)**
**VIOLATION OF IMMIGRATION AND NATIONALITY ACT – 8 U.S.C. §1231(a)(6)**

70. Mr. Davoodi re-alleges and incorporates paragraphs 1 to 62.

71. Even if Mr. Davoodi's detention were governed by 8 U.S.C. § 1231(a), he is subject to the discretionary, post-removal period detention provision Section 1231(a)(6) because he has been detained far beyond the mandatory 90-day removal period.

72. Section 1231(a)(6) and its implementing regulations 8 C.F.R. §241.4 and §241.5 authorize release, subject to an order of supervision, following the 90-day removal period.

73. In *Zadvydas,* the Supreme Court ruled that when detention under that provision exceeds six months, it is no longer presumptively reasonable, and the government must release the individual unless it can show that his removal is significant likely in the reasonably foreseeable future. *Id.* at 701.

74. Mr. Davoodi has been detained without a bond hearing for over six months, since January 2025.

75. There is no significant likelihood that the government will remove Mr. Davoodi in the reasonably foreseeable future, and there is ample reason to believe it will not be able to do so. Mr. Davoodi's case will likely remain pending on the appeal for many more months, during which time his removal will continue to be stayed, and he has been granted relief.

76. Thus, Mr. Davoodi is entitled to immediate release from detention or, alternatively a prompt individualized hearing to assess the legality and necessity of his continued detention.

## COUNT THREE
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFH AMENDMENT TO THE U.S. CONSTITUTION

77. Mr. Davoodi re-alleges and incorporates paragraphs 1 to 62 above.

78. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V.

79. Civil *immigration* detention violates due process if it is not reasonably related to its purpose. *See Zadvydas,* 533 U.S. at 690 (citing *Jackson v. Indiana,* 406 U.S. 715, 738 (1972)); *Demore,* 538 U.S. at 513. As categorical detention becomes increasingly prolonged, a "sufficiently strong special justification" is required to outweigh the significant deprivation of liberty. *Zadvydas,* 533 U.S. at 690-91.

80. Prolonged civil detention also violates due process unless it is accompanied by strong procedural protections to guard against the erroneous deprivation of liberty. *Id.* at 690-91; *Foucha,* 504 U.S. at 81-83. To justify Mr. Davoodi's ongoing prolonged detention,

due process requires that the government establish, at an individualized hearing before a neutral decision-maker, that Mr. Davoodi's detention is justified by clear and convincing evidence of flight risk or danger, even after consideration of whether alternatives to detention could sufficiently mitigate that risk, and taking into account his ability to pay bond. *See Salerno,* 481 U.S. at 750, 752; *Singh,* 638 F.3d at 1203; *Hernandez,* 872 F.3d at 990.

81. Mr. Davoodi's detention without a bond hearing, could last many more months or even years while DHS challenges his Withholding of Removal grant.

82. Nor has Mr. Davoodi been afforded the necessary procedural safeguards to guarantee against the erroneous deprivation of his liberty, especially as his detention grows increasingly prolonged in significant part due to the government's own delaying tactics.

83. Under these circumstances, Mr. Davoodi's detention violates substantive and procedural due process.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Davoodi's prays that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Ordre Respondents to show cause why the writ should not be granted within three days, and , if necessary, set a hearing on this Petition within five days of the return, pursuant to 28 U.S.C. §2243;

c. Grant a writ of habeas corpus ordering Respondents to immediately release Mr. Davoodi's from their custody;

d.  In the alternative, grant a writ of habeas corpus ordering Mr. Davoodi's release within 30 days unless Respondents schedule an individualized hearing before an Immigration Judge on whether Mr. Davoodi presents a risk of flight or danger, even after consideration of alternatives to detention and taking into account Mr. Davoodi's ability to pay a bond;

e.  Enter preliminary and permanent injunctive relief enjoining Respondent from further unlawful detention of Mr. Davoodi;

f.  Declare that Mr. Davoodi's detention without a bond hearing violates the Immigration and Nationality Act;

g.  Declare that Mr. Davoodi's detention without a bond hearing violates the Due Process Clause of the Fifth Amendment;

h.  Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. §2412; and

i.  Grant such further relief as this Court deems just and proper.


Dated: October 14, 2025.                    Respectfully submitted,


*/s/ Ashley Beard*
Ashley Beard, Esq.
The Beard Law Group.
1 Maiden Lane
Bluffton, SC 29910
(843) 707-7272
ashley@beard-law.com

**<u>INDEX</u>**

1. Copy of EROP.